John J. F. deFreitas *vs.* Israel Cote & another.

Bristol.    March 7, 1961. — April 28, 1961.

Present: Wilkins, C.J., Williams, Whittemore, Cutter, & Spiegel, JJ.

*Broker,* Commission.   *Contract,* For sale of real estate.

A provision of a contract for sale and purchase of real estate, in effect voiding the contract if the buyer should be unable to obtain a "G. I." loan on the basis of the agreed price, was for the benefit of the buyer and might be waived by him; and, in an action against the seller for a commission by a broker who had procured the buyer, where there was evidence that, although the buyer had been unable to obtain such a "G. I." loan, he had been able to obtain adequate financing otherwise and had notified the seller of his readiness to consummate the transaction "at the agreed price," but that the seller had refused to do so and it never had been consummated, it was reversible error to refuse a ruling requested by the plaintiff in substance that such provision of the contract did not confine the buyer to financing the purchase by means of a "G. I." loan.

CONTRACT.  Writ in the Superior Court dated October 30, 1958.

At the trial before *Smith, J.*, there was a verdict for the defendants.  The plaintiff alleged exceptions.

*M. David Scheinman,* for the plaintiff.

*Charles R. Desmarais & William H. Carey,* for the defendants, submitted a brief.

SPIEGEL, J.  In this action of contract the plaintiff, a real estate broker, seeks to recover a commission for producing a purchaser who was ready, willing, and able to buy a parcel of land with the buildings thereon belonging to the defendants.

On July 5, 1958, the plaintiff and the defendants entered into a written agreement, which created an exclusive agency in the plaintiff for a period of six months.  The selling price stated in the agreement was $16,800.

The plaintiff did procure a purchaser and a written agreement[1] was entered into by the purchaser and the defendants on July 14, 1958, for the price of $16,720.

The G. I. appraisal, mentioned in the agreement of sale, was less than the agreed selling price and presumably the prospective purchaser did not receive a G. I. loan.  The defendants had no intention of selling for the figure mentioned in the G. I. appraisal.  There was evidence, however, that the buyer was willing to pay the agreed price for the defendants' property; that he successfully negotiated

---

[1] "Agreement for the sale of land and all buildings and other improvements thereon numbered 177 and 179 Shaw Street, New Bedford, Massachusetts, the sellers, Israel Cote and Euphemie Cote of said New Bedford, Massachusetts, agree to sell, and the buyer, Antonio Rodrigues of said New Bedford, Massachusetts, agrees to buy the above mentioned property for the sum of Sixteen Thousand Seven Hundred Twenty Dollars ($16,720.00) with hot water installed at third floor by the sellers of which One Hundred Dollars ($100.00) has been paid this day as part payment and the balance of Sixteen Thousand Six Hundred Twenty Dollars ($16,620.00) shall be paid by the buyer to the sellers at time and place of delivery of warranty deed which is to take place within sixty days from the date hereof." "This sale is subject to a G. I. Loan and in the event that said amount is not approved, the deposit will be returned in full." "It is further understood and agreed that should the G. I. appraisal be less than requested and should the sellers refuse to sell for the amount of said appraisal, then this contract becomes null and void seven days after the bank receives said statement of appraisal." "A broker's commission will be paid John J. F. deFreitas by the sellers."

with the Fairhaven Institution for Savings to obtain a conventional mortgage in the amount of $12,800; that he had arranged with a friend of his for a loan of $3,000; that he had over $1,000 of his own money; and that these sums would be adequate to pay the purchase price of $16,720. There was further testimony that the prospective purchaser wrote a letter to the defendants on September 5, 1958, stating that he had the necessary money to buy the property "at the agreed price," and that he was ready to go through with the purchase; that the plaintiff asked the defendant Mrs. Cote, within two weeks after the agreement of sale was signed, to sell but that she refused; that after the time of performance had expired the proposed buyer purchased another property for $12,000; that the prospective purchaser had his $100 deposit refunded after the time of performance had expired; and that after the expiration of the time of performance set out in the agreement of sale, the defendant Mrs. Cote contacted the prospective buyer and offered to go through with the sale of the premises. Mrs. Cote in her testimony stated that she was always ready to comply with the agreement.

At the close of the evidence the plaintiff presented certain requests for instructions to the jury. Upon completion of the charge, the plaintiff duly excepted to the refusal of the judge to give several of these requests. The jury returned a verdict for the defendants.

There was error in the trial judge's refusal to give the plaintiff's request numbered 11.[1] The agreement of sale entered into between the defendants and the prospective purchaser is not a very clear or self defining document. It is a familiar principle of the law of contracts that an in-

---

[1] "That the following clauses in the binder agreement between the defendant sellers and the purchaser which reads as follows: 'This sale is subject to a G. I. Loan and in the event that said amount is not approved the deposit will be returned in full' and, 'It is further understood and agreed that should the G. I. appraisal be less than requested and should the sellers refuse to sell for the amount of said appraisal then this contract becomes null and void seven days after the bank received said statement of appraisal' does not limit the buyer to obtain a G. I. Loan as the only means of financing the transaction and all that he is required to do is be able to raise the necessary consideration regardless of its source."

strument must be construed according to the parties' intent. ''We must put ourselves in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter.'' *McQuade* v. *Springfield Safe Deposit & Trust Co.* 333 Mass. 229, 233. *Malaguti* v. *Rosen,* 262 Mass. 555, 560. The essence of the agreement of sale, in the present case, is contained in the language found in the first sentence of the agreement, ''the sellers . . . agree to sell, and the buyer . . . agrees to buy the above mentioned property for the sum of Sixteen Thousand Seven Hundred Twenty Dollars ($16,720.00) . . .'' This is the true purpose and intent of the parties in entering into this purchase and sale agreement. The language found later on in the agreement that ''This sale is subject to a G. I. Loan and in the event that said amount is not approved, the deposit will be returned in full'' was a condition inserted in the contract for the benefit of the buyer and as such could be waived by the buyer. *Jones* v. *United States,* 96 U. S. 24. 12 Am. Jur., Contracts, § 354. Restatement: Contracts, §§ 88, 297. Corbin, Contracts, § 83. Williston, Contracts (Rev. ed.) § 664. The buyer was dependent upon financial assistance in order to fulfill his obligations under the contract. It was obviously to the buyer's advantage that he be released from his obligations in the event he should be unable to procure financial assistance. It would be of no importance to the defendants whether the buyer was offered a G. I. loan if the buyer was still able to tender the full purchase price. The clause stating that ''It is further understood and agreed that should the G. I. appraisal be less than requested and should the sellers refuse to sell for the amount of said appraisal, then this contract becomes null and void . . .'' is surplusage. The clause anticipates the substitution of a different purchase price from that agreed upon. This was not the case. There was no evidence that a price less than $16,720 was offered the defendants. The clause quoted never came into effect.

The judge in his charge stated that if the G. I. loan was

not obtained and the appraisal was less than the amount requested and the figure mentioned in the appraisal was not accepted by the defendants the agreement of sale "became null and void and of no effect . . . [and] the plaintiff could not recover under it." This was contrary to the plaintiff's request for instruction numbered 11 which should have been given.

*Exceptions sustained.*